Hawkins, J.,
delivered the opinion of the Court.
This is an action of ejectment, to recover a small tract of land in Smith County. At the March Term, 1861, of the Circuit Court for said County, a trial was had, which resulted in a verdict and judgment in favor of the defendants. The plaintiff moved the Court for a new trial, which being refused, he has prosecuted- an appeal to this Court.
*521 Both parties claim title to the land in controversy, under Matthew Corley. The defendant, Sarah, is the widow; and the other defendants are the children, of said Matthew Corley, hy the said Sarah; and the plaintiff is the child of the said Matthew, hy a former marriage.
The plaintiff having filed an affidavit, stating the original had been lost or mislaid, or was fraudulently suppressed by the defendants, offered and read in evidence, without objection, a copy of a deed of gift of the land in controversy, from his father to himself, dated December 1st, 1837, the execution of which was acknowledged before the Clerk of the County Court for Smith County, on the 4th of December, and which was registered in the office of the Register for said county, on the 13th day of December, 1837.
The defendants read the copy of the Will of Matthew Corley, dated on the 18th of October, and admitted to probate in the County Court of said county, at the November Term thereof, in 1859, hy which he devised the land in controversy to the defendant, Sarah, for life, or during her widowhood, with remainder to the other defendants.
It appears from the proof that Matthew Corley was a man in humble circumstances, and was about eighty years of age at the time of his death, in October, 1859, and had continued to reside upon and cultivate the land from the date of the deed, in 1837, up to the time of his death; and during that- time frequently rented portions of it to others. The plaintiff was about sixteen years of age at the date of *522 the deed, and continued to reside with his father until about 1851, when he went to the State of Kentucky. In 1851 he rented a part of the land from his father, which he cultivated to himself, and for which he paid the rent. On one occasion, and about one year before the death of Matthew Gorlej, witness Hale, was at his house, and told him that he was getting old and ought to make a Will, and provide for his wife and little children; to which he replied, he had no right to the land, it belonged to William; he had made him a deed of gift to it many years ago, and expressed a desire to provide for his wife and little children, if he had anything to give them.
Witness Williams, states that some four or five years before his death, Matthew Corley was talking about moving away, when witness went to see him, and proposed to buy the land, to which Corley replied, the land did not belong to him — it belonged to his son, William. On another occasion, he asked Corley why he did not clear up a certain portion of the land, to which he replied he was afraid William would not like it; that after his death it belonged to William.
Witness Pope, states Corley had frequently told him the land belonged to William, but that he had it for his life time; to various persons, and at different times, he stated as a reason for not cutting wood on the land, that it belonged to William, and he was afraid William would not like it.
There is no proof in the record, showing that Matthew Corley ever, at any time, subsequently to the the date of the deed, until a short time before his *523 death, in any manner, disputed "William’s title to the land, or that, in any manner,, at' any time, he denied the execution and delivery of the deed of gift; or that, . at any time after the date of the deed in 1837, up to a short time before his death, he set up any claim to the land as his own. But, on the contrary, the record does show, that, on all occasions, from the date of the deed in 1837, up to the time of his death, in October, 1859, he acknowledged the execution and existence of the deed; and likewise, from the date of the deed up to a short time before his death, recognized .the validity of the donee’s title under it. There is no proof in the record showing any intention on the part of the donor to retain possession of the deed, or who had the actual custody thereof, after its registration, or any purpose on his part, to do anything more than was done — to give full effect thereto in vesting the title in the donee; and in fact, if anything further was wanting, the declaration of the donor, made only a short time before his death, and introduced by the defendants for the purpose of avoiding the deed and defeating the donee’s title under it, that he had deeded the land to William, but, that he had done so “in defraud,” to keep from paying a security debt, as well as the statement that William had- agreed to take car-e of him for the land, but had failed to do so, clearly negative the assumption that anything had been left undone by the donor which he believed to be necessary on his part, to give effect to the deed. . These declarations, made for the purpose of defeating the plaintiff’s title, distinctly place the defense upon other grounds. *524 And now, notwithstanding the great lapse of time, and the solemn declaration of Matthew Corley, , concerning the making the deed of gift and the title to the land, the principal question relied upon in argument here, as well as in the Court below, (as would appear from the charge of the Circuit Judge.) is, that the deed of gift of 1837, although acknowledged and registered, is inoperative, because, as it is insisted, it was never delivered, or intended to operate as a conveyance of the land; and this we infer to have been the conclusion of the jury. We think this assumption is not only wholly unsustained, but it is clearly met and overthrown by the testimony in the cause.
The counsel for defendants rely upon the cases of Taylor vs. Taylor, 2 Hum., 597; Martin vs. Ramsey, 5 Hum., 394; McEwen vs. Troust, 1 Sneed, 186, and Nailing vs. Nailing, 2 Sneed, 630, as authorities in point, in support of the proposition;
In the case of Taylor vs. Taylor, one Taylor made a sealed instrument, by the terms of which he gave to his son certain slaves. It was witnessed and deposited in his trunk, with a declaration it should take effect after his death, and not before. In that case, the Court held there had been no delivery of the instrument, and delivery being essential to constitute a deed of gift, the instrument could not be set up as such.
In the case of Martin vs. Eamsey, complainant’s intestate, executed a deed of gift to his daughter, Elizabeth, for two slaves, which remained in his possession until his death, and being found among his papers, was *525 afterwards deposited in the office of the Clerk of the County Court, and proved. After making the deed, Being involved in a law suit, as security for the husband of his daughter, Elizabeth, he was heard to say, if he lost the suit, he intended one of the slaves to pay the debt, and if one was not sufficient, then the other should go to pay it; and the Court, upon this state of facts, held, that no formal manual delivery to the grantee is necessary to the validity of a deed. If, by his conduct and declarations, the grantor evinced that he considered the act complete, when he acknowledged it before subscribing witnesses, that would be sufficient to vest the title in the donee. But the mere fact that the paper is found signed and witnessed, would not have that effect. There should have been some evidence that the paper was delivered, or that the grantor intended his signature and acknowledgment before witnesses, as vesting the title and completing all that was necessary for him to do to effect that object. But the Court said there was no such proof in the record. On the contrary, there was proof that he retained the deed in his possession, and withheld it from his daughter and her husband until he should ascertain the result of the suit then pending. These circumstances, the Court said, are persuasive that no act was done by the donor, by which the title to the slaves vested in the donee; and were sufficient to place the onus of proof upon the defendant, that such act was done.
In the case of McEwen vs. Troost, Dr. Gerard Troost had made a deed of gift to his son and daughter, of all his mineralogical and geological specimens, and *526 other personalty, which was acknowledged, and registered in the Register’s office in Davidson County, in 1840. The donor retained possession of the property until his death, in 1850. The consideration set forth in that deed is the same as set forth in the deed now before the Court, to-wit: the love and affection of the donor for the donees; and it will be observed, that, in many respects, that case was similar to the case now under consideration. In that case, the Court held that delivery is essential to the execution of a deed, but that it need not be formal and manual, if the intention to accept the deed manifestly appear. The delivery may be informal, from other facts. And if a deed be made and delivered to the Register for registry, without more, that is no delivery; but if the grantor direct ‘it to be recorded, or subsequently assent thereto, we should consider that equivalent to an actual delivery and acceptance: Maynard vs. Maynard, 10 Mass., 456; Sampson vs. Thornton, 3 Metcalf, 275; 4 Kent Com., 455, note. A few days before the- death of the donor, he recognized the existence of the deed, and declared his purpose that it take full effect. The Court held the gift was -valid, and had the effect to vest in the donees the title to the property named in the deed.
The case of Nailing vs. Nailing was upon an issue devisavit vel non, involving the validity of the Will of Nelson Nailing, deceased. Upon the trial, “a deed of gift, made by the testator, in 1825, for twenty-nine slaves,” was read in evidence. The records of an action for slander, of the same date, instituted against the testator, was also read. The deed was made to evade the *527 dreaded consequences of the action for slander. It was not considered and acted on by the parties as an absolute gift, and the testator continued to claim and possess the slaves as his own, as though the gift had never been made.
Now, by applying the'rules laid down in the cases cited, to the facts in this case, as they appear in the record, we are clearly of the opinion, that the deed of ■gift of December 1st, 1837, is valid, and operates to vest in the donee the title to the land in controversy. And the fact that the donor continued to reside upon, cultivate, and rent out the land, from the date of the deed, in 1827, to the time of his death, in 1859; and that in 1851, he actually rented a portion of the land to the donee, who paid the rent; and that the land was listed for taxes in the name of the donor, who paid the taxes; when taken in connection with the other facts in the case, together with the oft-repeated declaration of the donor concerning the title, and explanatory of his holding, can make no difference as to the question of the validity and effect of the deed.
The Circuit Judge was asked to charge the jury, that, “in deciding upon the question of the delivery of the deed, they might look to' the fact that the donor had repeatedly recognized the lands as the lands of plaintiff,” which he declined to do. In this, we think there was error. The law is, if the grantor acknowledged the execution of the deed, and directed it to be registered, or subsequently assent thereto, or recognize it as a valid conveyance, or recognize the title of the grantor under it, that, although not a delivery, is equiv *528 alent to the delivery of the deed, and we think the Circuit Judge should so have instructed the jury; and his failure to' do so, doubtless, led the jury to' believe that but little, if any, 'importance, was to be attached to such facts, in determining the question as to the delivery of the deed. But, however this may have been, the instructions asked for were relevant to the state of facts presented by the evidence in the cause, and material to the plaintiffs rights. The law holds certain facts equivalent to the delivery of the deed, and it is the duty of the Court to instruct the jury with reference to the facts in the case, as to the law arising upon such facts, leaving the jury to ascertain whether the facts have been proven or not-.
In the view we take of this case, we are unable to find any evidence in the record to sustain the verdict, or, certainly, to discover the grounds upon which it was based; but we think it probable the verdict would have been different, had it not been for the fact that the charge, instead of being made with reference to the case, as made out by the proof, as touching the question of the delivery of the deed, was made with reference to a different state of facts, and not such as were exhibited by the evidence.
We think His Honor, the Circuit Judge, erred in refusing to grant a new trial. The judgment of the Circuit Court will be reversed, and the cause remanded.